Anna Reeves Olson (WY Bar No. 6-3692)
LONG REIMER WINEGAR LLP
242 South Park Street
Casper, WY 82601
aolson@lrw-law.com
Tel: (307) 265-3843

Leena Soni (*pro hac vice* forthcoming)
Madison G. Satterly (*pro hac vice* forthcoming)
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 South Wacker Drive, Ste. 3600
Chicago, IL 60606
lsoni@nicolaidesllp.com
msatterly@nicolaidesllp.com
Tel: (312) 585-1400
Fax: (312) 585-1401

*Attorneys for Plaintiff Markel Insurance Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| TRINITY TEEN SOLUTIONS, INC.; a | ) | |
| Wyoming corporation; ANGELA C. | ) | |
| WOODWARD; JERRY D. WOODWARD; | ) | |
| KARA WOODWARD; KYLE WOODWARD; | ) | |
| and DALLY-UP, LLC, a Wyoming limited | ) | |
| liability company. | ) | |
| | | |
| Defendants. | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Markel Insurance Company ("MIC"), by and through its undersigned counsel, and

pursuant to Federal Rule of Civil Procedure 57, files its Complaint for Declaratory Judgment

against Defendants Trinity Teen Solutions, Inc. ("Trinity"), Angela C. Woodward, Jerry D.

Woodward, Kara Woodward, Kyle Woodward, and Dally-Up, LLC ("Dally-Up") (collectively, the "Trinity Defendants"), and states as follows:

## INTRODUCTION

1.      From September 12, 2009 to September 12, 2020, MIC issued commercial liability package policies to Trinity. In 2020, Carlie Sherman, Anna Gozun and Amanda Nash (collectively, "Underlying Plaintiffs") filed an action captioned *Sherman, et al. v. Trinity Teens Solutions, Inc.*, *et al.*, No. 2:20-cv-00215-SMS, in the United States District Court for the District of Wyoming (the "Underlying Lawsuit") alleging, among other things, that Underlying Plaintiffs suffered forced labor and trafficking at the hands of the Trinity Defendants while attending its "ranch for troubled teens."

2.      MIC is providing a defense to the Trinity Defendants pursuant to a reservation of rights to limit or decline coverage and recoup defenses costs if it is determined that the MIC Policies do not provide coverage for the Underlying Lawsuit. Because the Underlying Lawsuit now only alleges violations of the Trafficking Victim Protection Act, 18 U.S.C. §§ 1589(a)-(b), 1590(a), there is no potential for coverage under MIC's policies, including any duty to defend.

3.      By this action, MIC seeks this Court's declaration that it owes no duty to defend or indemnify the Trinity Defendants in the Underlying Lawsuit and seeks leave to withdraw its defense and recoup defense costs. A real, substantial, and justiciable controversy has arisen and now exists between MIC and the Trinity Defendants. This controversy is subject to resolution under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

4.      MIC is an Illinois corporation with its principal place of business in Virginia.

5.      Trinity is a Wyoming corporation with its principal place of business in Wyoming.

6.      Angela C. Woodward is a citizen of Wyoming.

7.      Jerry D. Woodward is a citizen of Wyoming.

8.      Kara Woodward is a citizen of Wyoming.

9.      Kyle Woodward is a citizen of Wyoming.

10.     Dally-Up is a Wyoming limited liability company with its principal place of business in Wyoming.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because MIC and the Trinity Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because: Trinity and Dally-Up maintain their principal places of business in this district; Angela C. Woodward, Jerry D. Woodward, Kara Woodward and Kyle Woodward reside in this district; this action involves a dispute regarding insurance coverage under insurance policies issued to Trinity in this district; and MIC is defending the Trinity Defendants in the Underlying Lawsuit, which is pending in this district; and all of the claims asserted in the Underlying Lawsuit arise from conduct that took place in this district.

13.     An actual controversy exists between MIC and the Trinity Defendants regarding the nature and extent of MIC's coverage obligations, if any, relative to the Underlying Lawsuit, which controversy is subject to resolution under 28 U.S.C. §§ 2201 and 2202.

## GENERAL ALLEGATIONS

### A.     *The Underlying Lawsuit*

14.     On November 25, 2020, Carlie Sherman, Anna Gozun and Amanda Nash filed the Underlying Lawsuit against the Trinity Defendants on behalf of themselves and a class of others similarly situated. On February 12, 2021, Underlying Plaintiffs filed a First Amended Complaint ("FAC") against the Trinity Defendants in the Underlying Lawsuit. A copy of the FAC is attached as Exhibit A.

15.     The sole remaining claims against the Trinity Defendants in the Underlying Complaint are Counts I for Civil Action Under Federal Law for Forced Labor 18 U.S.C. § 1589(a), II for Civil Action Under Federal Law for Forced Labor 18 U.S.C. § 1589(b), and III for Civil Action Under Federal Law for Trafficking 18 U.S.C. § 1590(a).[1]

16.     The FAC alleges that Trinity operates a "ranch for troubled teen girls," which Underlying Plaintiffs claim "operates as a working ranch under the guise of a Residential Treatment Center in Park County, Wyoming." Ex. A at ¶ 4.

17.     The FAC alleges that Angela C. Woodward is an owner, manager, and/or member of Trinity and Dally-Up. *Id.* at ¶ 35.

18.     The FAC alleges that Jerry D. Woodward is an owner, manager, and/or member of Trinity and Dally-Up. *Id.* at ¶ 36.

19.     The FAC alleges that Kara Woodward is an owner, manager, and/or member of Trinity and Dally-Up and serves as the Staff Supervisor for Trinity. *Id.* at ¶ 40.

20.     The FAC alleges that Kyle Woodward is an owner, manager, and/or member of Trinity and Dally-Up and is the Assistant Director and Marketing Director of Trinity. *Id.* at ¶ 41.

---

[1] On November 30, 2021, the District Court dismissed, with prejudice, the FAC's Count IV for Civil Action for Violation of Federal Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961 *et seq*. and Count V for Negligence and Negligent Infliction of Emotional Distress.

21.     The FAC alleges Dally-Up owns the land on which Trinity operates its ranch. *Id.* at ¶ 44.

22.     The FAC alleges the Trinity Defendants engaged in human trafficking and forced Underlying Plaintiffs and others similarly situated to perform labor without compensation in violation of the Trafficking Victims Protection Act (the "TVPA"), for which Underlying Plaintiffs are asserting a civil action pursuant to the Trafficking Victims Protection Reauthorization Act (the "TVPRA").

23.     The FAC alleges that the Trinity Defendants "engaged in a recruitment scheme whereby they induced and continue to induce parents of troubled minors to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment, therapy, and continuing education" in order to "obtain cheap and easily exploited labor." *Id.* at ¶ 4.

24.     The FAC alleges that Underlying Plaintiffs "were transported to Wyoming, often through legal kidnapping . . . and forced to work in unfathomable conditions while receiving little to no formal education, behavioral treatment, or therapy." *Id.* at ¶ 9. Further, Underlying Plaintiffs allege "they were made to labor from early morning until late at night, without pay, under the constant threat of physical and emotional punishment and further confinement." *Id.*

25.     The FAC alleges the Trinity Defendants forced Underlying Plaintiffs to complete "all chores and ranch duties, including, but not limited to, running miles of irrigation lines, picking rocks out of fields for days at a time, setting thousands of fence posts, loading massive trucks of hay daily, repairing barbed wire fencing, cleaning, cooking, tending farm animals, birthing livestock, [and] maintaining fires throughout the night[.]" *Id.* at ¶ 12.

26.     The FAC alleges the Trinity Defendants "used or threatened food and sleep deprivation, physical punishment, emotional abuse, and humiliation daily to ensure compliance with the labor requirements." *Id.* at ¶ 64.

27.     The FAC alleges the Trinity Defendants engaged in a scheme designed to make Underlying Plaintiffs "afraid, intimidated, and powerless to leave [Trinity Defendants] employment while [Trinity Defendants] profited or knowingly benefitted, financially or through receipt of free labor, from participation in a venture which [Trinity Defendants] knew or should have known was unlawful." *Id.* at ¶ 19.

28.     Specific to Underlying Plaintiff Carlie Sherman, the FAC alleges:

    a.     Sherman was a resident of Trinity from May 2012 until July 2013 and then again from July 2014 until October 2015.

    b.     Carlie Sherman was allegedly forced: to cook for twenty people daily; shovel manure for four hours daily; pick rocks for multiple hours per day; complete hay runs and manually load and unload hay trucks; run irrigation pipes; fix broken fencing and barbed wire; clean ranch equipment, office buildings, and steel barns and animal barns daily; feed, groom, and provide medical attention to animals daily; clean ranch vehicles; and engage in animal husbandry.

    c.     Sherman alleges she suffered mild frostbite on her fingers, suffered multiple twisted ankles, ingrown toenails, yeast infections, lice, lacerations from falling on rocks and cacti, received delayed or no medical treatment for her alleged injuries, and was routinely denied access to a restroom or latrine.

    d.     Sherman alleges she was coerced into performing the above labor through threats of serious harm to or physical restrain and through a scheme, plan, or pattern intended to cause her to believe that failure to perform an act would result in serious harm or physical restraint. Specifically, Sherman alleges she was threatened with: denial of progression through Trinity's system; additional labor; additional undesirable tasks; an insubstantial diet; running on a dangerous, rocky, steep hill; sitting in a chair and staring at the wall for extended periods of time; sleep deprivation; humiliation rituals; and verbal, psychological and emotional abuse.

*Id.* at ¶¶ 113-17.

29.    Specific to Underlying Plaintiff Anna Gozun, the FAC alleges:

    a.   Gozun was a resident of Trinity from February 2, 2012 until August 1, 2012.

    b.   Gozun was allegedly forced to perform labor substantially similar to that endured by Carlie Sherman and, in addition, was forced to chop fire wood with an axe.

    c.   Gozun alleges she aggravated an existing ankle injury when she was forced to perform hard labor at Trinity, suffered frequent burns and cuts, suffered frequent urinary tract infections and was diagnosed with Hydronephrosis,  and upon release from Trinity, was diagnosed with post-traumatic stress disorder.

    d.   Gozun alleges she was coerced into performing the above labor through threats of serious harm to or physical restrain and through a scheme, plan, or pattern intended to cause her to believe that failure to perform an act would result in serious harm or physical restraint. Specifically, Gozun alleges she was threatened with: denial of progression through Trinity's system; additional labor; additional undesirable tasks; an insubstantial diet; running on a dangerous, rocky, steep hill; sitting in a chair and staring at the wall for extended periods of time; sleep deprivation; humiliation rituals; and verbal, psychological and emotional abuse.

*Id.* at ¶¶ 118-22.

30.    Specific to Underlying Plaintiff Amanda Nash, the FAC alleges:

    a.   Nash was a resident of Trinity from May 7, 2015 until November 2015.

    b.   Nash was allegedly forced: perform cleaning and laundry in all cabins daily; cook for twenty people daily; shovel manure for multiple hours daily; complete hay runs and manually load and unload hay trucks; run irrigation pipes; pick rocks for multiple hours daily; transport deceased animals to be disposed without training, supervision or safety equipment; and care for a farm animal 24-hours per day.

    c.   Nash alleges she suffered physical injuries from the farm animal in her care, physical and psychological pain and suffering, and was diagnosed with post-traumatic stress disorder.

    d.   Nash alleges she was coerced into performing the above labor through threats of serious harm to or physical restrain and through a scheme, plan, or pattern intended to cause her to believe that failure to perform an act would result in serious harm or physical restraint. Specifically, Nash alleges she was threatened with: denial of progression through Trinity's system; additional labor; additional undesirable tasks; an insubstantial diet; running on a dangerous, rocky, steep hill; sitting in a chair and staring at the wall for extended periods of time; sleep deprivation; humiliation rituals; and verbal, psychological and emotional abuse.

*Id.* at ¶¶ 123-30.

31.    In the FAC, Underlying Plaintiffs assert that they are entitled restitution damages to compensate them for unpaid wages, compensatory damages for emotional distress to redress noneconomic harm caused by the Trinity Defendants' conduct, and are entitled to recover funds paid to Trinity Defendants for the Underlying Plaintiffs' stays. *Id.* at ¶¶ 142-43, 145-46.

32.    The FAC asserts three remaining viable counts against the Trinity Defendants.

33.    Count I alleges Forced Labor in violation of § 1589(a) of the Trafficking Victims Protection Act (the "TVPA"), including that Trinity Defendants "knowingly provided or obtained the labor services of [Underlying] Plaintiffs . . . by means of force, threats of force, physical restrain, or threats of physical restraint, . . . serious harm or threats of serious harm, . . . [and] by means of a scheme, plan, or pattern intended to cause [Underlying] Plaintiffs . . . to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a)." *Id.* at ¶¶ 160-63. Underlying Plaintiffs allege that, as a result of Trinity Defendants' conduct, they suffered economic damages and emotional and physical pain and suffering. *Id.* at ¶¶ 164-65.

34.    Count II alleges Forced Labor in violation of § 1589(b) of the TVPA, including that the Trinity Defendants "knowingly benefitted financially and/or received things of value from participating in a venture which had engaged in the providing or obtaining of forced labor or services, knowing or in reckless disregard of the fact that the venture had engaged in the providing or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b)." *Id.* at ¶ 168. Underlying Plaintiffs allege that, as a result of Trinity Defendants' conduct, they suffered economic damages and emotional and physical pain and suffering. *Id.* at ¶¶ 169-70.

35.    Count III alleges Trafficking in violation of § 1590(a) of the TVPA, including that the Trinity Defendants "knowingly recruited, harbored, transported, provided, and/or obtained by

any means [Underlying Plaintiffs] for their labor or services in violation of 18 U.S.C. § 1590(a).." *Id.* at ¶ 173. Further, Count III alleges the Trinity Defendants violated the TVPA by "knowingly benefitted financially and/or by receiving things of value from participating in a venture which engaged in the trafficking of forced labor . . . knowing or in reckless disregard of the fact that the venture was engaged in the trafficking of forced labor or services[.]" *Id.* at 174. Underlying Plaintiffs allege that, as a result of the Trinity Defendants' conduct, they suffered economic damages. *Id.* at ¶ 175.

36.     In their prayer for relief, Underlying Plaintiffs seek compensatory damages, treble damages, reasonable attorneys; fees, costs and expenses, and pre- and post-judgment interest. *Id.*, Prayer for Relief.

37.     On October 5, 2022, the District Court denied class certification, and the Underlying Lawsuit was stayed pending appellate review.

38.     On October 31, 2023, the U.S. Court of Appeals for the Tenth Circuit vacated the District Court's October 5, 2022 judgment and remanded for reconsideration of class certification.

39.     On November 30, 2023, the District Court lifted the stay, and the Underlying Lawsuit is proceeding.

40.     On April 22, 2024, the District Court granting Underlying Plaintiff's Motion to Certify Class, certifying a class of individuals "[f]rom November 27, 2010, to the present, [Underlying] Plaintiffs, and all similarly situated persons who received treatment from Defendant Trinity Teen Solutions, Inc. and were subject to the provision of 'agricultural labor' . . . or any other manual labor to one or more of the Defendants without payment for said labor."

**B.     *MIC's Defense and Reservation of Rights***

41.     Trinity tendered the Underlying Lawsuit to MIC on December 3, 2020.

42.     On January 21, 2021 MIC advised Trinity that it would defend the Trinity Defendants in the Underlying Lawsuit subject to a full and complete reservation of rights under the MIC Policies, including the right to withdraw the defense and seek declaratory relief. A copy of MIC's January 21, 2021 letter is attached as Exhibit B.

43.     On January 27, 2022, following the District Court's rulings on various motions to dismiss in the Underlying Lawsuit, MIC advised that it would continue defending Trinity Defendants in the Underlying Lawsuit subject to a full and complete reservation of rights, including the right to withdraw the defense and seek declaratory relief. A copy of MIC's January 27, 2022 letter is attached hereto as Exhibit C.

44.     On June 10, 2024, MIC advised the Trinity defendants that the Policies do not provide coverage for the claims that remain pending in the Underlying Lawsuit; that MIC had no duty to defend or indemnify the Trinity Defendants in connection therewith; and that MIC intends to file a declaratory judgment action and seek a withdrawal of its defense until such time the Court rules. A copy of MIC's June 10, 2024 letter is attached hereto as Exhibit D.

**MIC'S INSURANCE POLICIES**

45.     MIC issued the following primary Commercial Package Liability Policies to Trinity:

a.      No. 8502SS329058-0 (9/12/2009 – 9/12/2010) (the "2009-10 Policy");
b.      No. 8502SS329058-1 (9/12/2010 – 9/12/2011) (the "2010-11 Policy");
c.      No. 8502SS329058-2 (9/12/2011 – 9/12/2012) (the "2011-12 Policy");
d.      No. 8502SS329058-3 (9/12/2012 – 9/12/2013) (the "2012-13 Policy");
e.      No. 8502SS329058-4 (9/12/2013 – 9/12/2014) (the "2013-14 Policy");
f.      No. 8502SS329058-5 (9/12/2014 – 9/12/2015) (the "2014-15 Policy");
g.      No. 8502SS329058-6 (9/12/2015 – 9/12/2016) (the "2015-16 Policy");
h.      No. 8502SS329058-7 (9/12/2016 – 9/12/2017) (the "2016-17 Policy");
i.      No. HUP2816-01 (9/12/2017 – 9/12/2018) (the "2017-18 Policy");
j.      No. HUP2816-02 (9/12/2018 – 9/12/2019) (the "2018-19 Policy"); and
k.      No. HUP2816-03 (9/12/2019 – 9/12/2020) (the "2019-20 Policy").

(the "Policies"). Copies of the Policies are attached as Exhibits E-1 through E-11, respectively.

46.     The Policies provide coverage on the same or substantially similar forms, except where indicated.

<u>**COUNT I**</u>
**No Duty to Defend or Indemnify Under Coverage A for**
**Bodily Injury or Property Damage Caused By an Occurrence**

47.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

48.     The Policies provide coverage under Coverage Part I.A.: Bodily Injury and Property Damage Liability, which states:

**1.     Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

   *        *        *

   **b.**     This insurance applies to "bodily injury" and "property damage" only if:

   **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence[.]"

   **(2)**     The "bodily injury" or "property damage" occurs during the policy period[.]

   *        *        *

49.     The Policies define "bodily injury," in pertinent part, as "bodily injury, sickness or disease sustained by a person, and also includes mental anguish or emotional distress provided such mental anguish or emotional distress results from any of these at any time."

50.     The Policies define "property damage," in pertinent part, as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured."

51.     The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

52.     The FAC alleges that in the guise of providing therapy, the Trinity Defendants engaged in human trafficking and forced labor of Underlying Plaintiffs to provide labor services at working ranch without training or oversight and in unfathomable conditions.

53.     The FAC alleges that Underlying Plaintiffs were subject to threats of serious harm or restrain if they refused to comply with Trinity Defendants' forced labor.

54.     The FAC alleges that Underlying Plaintiffs were forced to run miles on dangerous terrain, including hills with sharp rocks.

55.     The FAC alleges injury or damage that was expected or intended by the standpoint of the insured.

56.     Some or all of the harm alleged in the FAC does not constitute "bodily injury."

57.     Some or all of the damage alleged in the FAC does not constitute "property damage."

58.     The FAC does not allege "bodily injury" or "property damage" caused by an "occurrence," because there are no allegations that the Trinity Defendants' conduct was accidental or that the resulting harm was accidental but rather that the Trinity Defendants:

        a.     Knowingly engaged in a scheme to obtain the Underlying Plaintiffs' labor services by means of serious harm, force, physical restraint or threats thereof.

b.      Knowingly financially benefitted from the forced labor imposed upon the Underlying Plaintiffs.

59.     Thus, the Insuring Agreement is not triggered where there are no allegations of damages because of "bodily injury" or "property damage" caused by an "occurrence."

60.     The Policies do not provide coverage for damages because of "bodily injury" or "property damage" that did not take place during one or more of the Policies' respective policy periods.

61.     In the alternative, even if Coverage were triggered, the 2009-10, 2010-11, 2011-12 2012-13 Policy, and 2013-14 Policies exclude coverage for Expected or Intended Injury including "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured."

62.     The 2014-15, 2015-16, 2016-17 and 2017-18 Policies contain a Corporal Punishment Endorsement, which excludes coverage for Expected or Intended Injury including "bodily injury" or "property damage that is "expected or intended from the standpoint of the insured," but does not exclude coverage for "bodily injury" resulting from "corporal punishment to your student administered by or at the direction of any insured."

63.     Therefore, MIC has no duty to defend or indemnify the Trinity Defendants under the Policies' Coverage A, because the insuring requirements cannot be met and coverage is otherwise excluded.

## COUNT II
### No Duty to Defend or Indemnify Under Coverage B for Personal and Advertising Injury

64.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

65.     The Policies provide coverage under Coverage Part I.B.: Personal And Advertising Injury Liability, which states:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1.     **Insuring Agreement**

    **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

          \*     \*     \*

    **b.**   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

          \*     \*     \*

66.     The Policies define "personal and advertising injury" as:

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**   False arrest, detention or imprisonment;

    **b.**   Malicious prosecution;

    **c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**   Oral, written or professionally produced television or videotaped publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**   Oral, written or professionally produced television or videotaped publication, in any manner, of material that violates a person's right of privacy;

    **f.**   The use of another's advertising idea in your "advertisement"; or

**g.**     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

67.     The FAC alleges that Underlying Plaintiffs' parents consented to, and paid substantial sums of money for, their children's attendance at Trinity Defendants' treatment program.

68.     The FAC alleges that Underlying Plaintiffs were transported to Trinity by way of legal kidnapping.

69.     The FAC does not allege damages because of "personal and advertising injury."

70.     The Policies do not provide coverage for damages because of "personal and advertising injury" that was not caused by an offense committed during one or more of the Policies' respective policy periods.

71.     The Policies exclude coverage for Knowing Violation Of Rights Of Another, "personal and "advertising injury" that was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury."

72.     The FAC alleges injury or damage that was caused by or at the direction of the Trinity Defendants with the knowledge their acts would violate Underlying Plaintiffs' rights and inflict "personal and advertising injury," including that the Trinity Defendants:

a.     Knowingly provided or obtained Underlying Plaintiffs' labor services by means of force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm in violation of the TVPA.

b.     Knowingly benefitted from financially and/or received things of value from participating in a venture which engaged in providing or obtaining forced

labor services, knowing or in reckless disregard that the venture provided or obtained such services in violation of the TVPA.

  c. Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or services in violation of the TVPA.

73. The Policies' Criminal Acts exclusion, coverage is excluded for "personal and advertising injury" "arising out of a criminal act committed by or at the direction of the insured."

  a. The FAC alleges injury or damage that arose from acts criminalized under the TVPA and committed by or at the Trinity Defendants' direction, including that the Trinity Defendants: Knowingly provided or obtained Underlying Plaintiffs' labor services by means of force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm, conduct criminalized under the TVPA.

  b. Knowingly benefitted from financially and/or received things of value from participating in a venture which engaged in providing or obtaining forced labor services, knowing or in reckless disregard that the venture provided or obtained such services, conduct criminalized under the TVPA.

  c. Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or service, conduct criminalized under the TVPA.

74. Therefore, MIC has no duty to defend or indemnify the Trinity Defendants under the Policies Coverage B, because the insuring requirements cannot be met and coverage is otherwise excluded.

## COUNT III
### The Abuse or Molestation Coverage Exclusion Bars Coverage

75.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

76.     Coverage under the 2015-16 Policy, the 2016-17 Policy, the 2017-18 Policy, the 2018-19 Policy, and the 2019-20 Policy is excluded by the Abuse Or Molestation exclusion, which precludes coverage for "bodily injury," "property damage," or "personal and advertising injury" arising out of "the actual or threatened abuse, molestation or exploitation by anyone."

77.     The FAC alleges the Underlying Plaintiffs were subject to verbal, physical, psychological, and emotional abuse at the hands of Trinity Defendants.

78.     The FAC alleges harm and damages that arose out of the actual or threatened abuse by Trinity the Defendants

79.     MIC has no duty to defend and indemnify the Trinity Defendants under the 2015-16 Policy, the 2016-17 Policy, the 2017-18 Policy, the 2018-19 Policy, and the 2019-20 Policy, because coverage is excluded under the Abuse or Molestation exclusion.

## COUNT IV
### No Duty to Defend or Indemnify – Abuse or Molestation Coverage

80.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

81.     The 2010-11, 2011-12 2012-13, 2013-14, and 2014-15 Policies contain an Abuse or Molestation Coverage Endorsement, which provides:

A.    **COVERAGE**

1.    **Insuring Agreement**

We will pay those sums the insured becomes legally obligated to pay as damages that result in "bodily injury", "property damage", "personal and advertising injury", or any other injury because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a

person for whom any insured is or ever was legally responsible. Coverage includes the actual, alleged, or threatened abuse, molestation or exploitation by anyone of any person while in the care, custody or control of any insured.

The term "bodily injury" includes mental anguish or emotional distress.

82.      The 2015-16, 2016-17, 2017-18, 2018-19 Policy, and the 2019-20 Policies contain

an Abuse or Molestation Coverage Endorsement, which provides:

**1.      Insuring Agreement**

    **a.**      We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of abuse, molestation or exploitation to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking such damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. Nor do we have a duty to defend any insured who is alleged to have taken part in the abuse, molestation or exploitation.

                      \*      \*      \*

    **b.**      This insurance applies to "bodily injury" arising out of abuse, molestation, or exploitation only if the abuse, molestation or exploitation:

        **(1)**      Takes place in the "coverage territory";

        **(2)**      Results from the insured's negligence in employment, investigation, supervision, reporting to the proper authorities or failure to so report, training or retention; and

        **(3)**      First occurs during the policy period.

83.      There is no Abuse Or Molestation Coverage for the Underlying Lawsuit because it

does not allege abuse, molestation or exploitation arising out of negligent employment, training,

supervision, reporting, or retention by the Trinity Defendants but, rather, alleges forced labor and

human trafficking.

18

84.     The Abuse Or Molestation Coverage Endorsements exclude coverage for "any insured who takes part in the abuse, molestation or exploitation."

    a.      The FAC alleges the Trinity Defendants took part in abuse, molestation or exploitation, including that the they:  Knowingly provided or obtained Underlying Plaintiffs' labor services by means of force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm in violation of the TVPA.

    b.      Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or services in violation of the TVPA.

    c.      Took part in the abuse or exploitation of Underlying Plaintiffs.

85.     The Abuse Or Molestation Coverage Endorsements exclude coverage for any "insured who remains passive upon gaining knowledge of any actual, alleged or threatened abuse, molestation or exploitation."

86.     The FAC alleges the Trinity Defendants remained passive upon gaining knowledge of any actual, alleged or threatened abuse, molestation or exploitation, including that they:

    a.      Knowingly provided or obtained Underlying Plaintiffs' labor services by means for force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm in violation of the TVPA.

    b.      Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or services in violation of the TVPA.

      c.     Remained passive upon gaining knowledge of any actual, alleged or threatened abuse or exploitation.

87.     Therefore, MIC has no duty to defend or indemnify the Trinity Defendants under the under the Policies' Abuse Or Molestation Endorsements, because the insuring requirements cannot be met and coverage is otherwise excluded.

<u>**COUNT V**</u>
**The Colleges or Schools Exclusion Bars Coverage**

88.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

89.     The Policies contain a Colleges or Schools Endorsement that excludes coverage for "bodily injury," "property damage," or "personal and advertising injury" caused by "[t]he rendering or failure to render (a) medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction, or the related furnishing of food or beverages" and "(b) any health or therapeutic services, treatment, advice or instruction[.]"

90.     The FAC alleges that Underlying Plaintiffs were denied treatment, therapy, continuing education and basic human necessities such as food while attending Trinity.

91.     The FAC alleges that Underlying Plaintiffs suffered physical injuries without receiving timely access to medical treatment.

92.     Coverage is excluded under the Colleges or Schools Endorsement, because any alleged injury or harm arose out of or was caused by the Trinity Defendants' rendering of or failure to render medical services, treatment or advice or any health or therapeutic services

93.     MIC has no duty to defend or indemnify the Trinity Defendants under the Policies' Colleges or Schools Endorsements.

<u>**COUNT VI**</u>
**The Services Furnished by Health Care Providers Exclusion Bars Coverage**

94.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

95.     The 2010-11, 2011-12, and 2012-13 Policies have been endorsed with an Exclusion – Services Furnished By Health Care Providers that excludes coverage for "bodily injury," "property damage," or "personal and advertising injury" arising out of "[t]he rendering or failure to render: (a) medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction, or the related furnishing of food or beverages" and "(b) any health or therapeutic services, treatment, advice or instruction[.]"

96.     In the FAC, Underlying Plaintiffs allege they were denied treatment, therapy, continuing education and basic human necessities such as food while attending Trinity. Additionally, the FAC alleges that Underlying Plaintiffs suffered physical injuries without receiving timely access to medical treatment.

97.     Coverage under the 2010-11, 2011-12, and 2012-13 Policies is excluded because any alleged injury or harm arose out of or was caused by the Trinity Defendants' rendering of or failure to render medical services, treatment or advice or any health or therapeutic services.

98.     MIC has no duty to defend or indemnify the Trinity Defendants under the 2010-11, 2011-12, and 2012-13 Policies' per the Exclusion – Services Furnished By Health Care Providers.

## <u>COUNT VII</u>
### No Duty to Defend or Indemnify – Professional Liability Coverage

99.     MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

100.    The Policies contain a substantively similar Miscellaneous Professional Liability Coverage Endorsements, which provide:

**MISCELLANEOUS PROFESSIONAL LIABILITY**

We will pay all sums which you become legally obligated to pay as "damages" arising out of a covered "wrongful act" to which this insurance applies or "wrongful act(s)" of others for which you are liable. We have the right and the duty to defend

the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result. The "damages" must arise out of a "wrongful act" taking place in the "coverage territory" during the policy period.

101.    The Policies define "wrongful act" as "any actual or alleged negligent act, error or omission in the actual rendering of professional services to others . . . including the furnishing of food, beverages, medications or appliances in connection therewith."

102.    There is no coverage under the Miscellaneous Professional Liability Coverage Endorsement for the Underlying Lawsuit because no "damages" alleged arise out of a "wrongful act."

103.    The Miscellaneous Professional Liability Coverage Endorsements provide no coverage for damages arising out of a "wrongful act" that was not committed during one or more of the Policies' respective policy periods.

104.    The Miscellaneous Professional Liability Coverage Endorsement exclude coverage for "liability resulting from any actual, threated, or alleged abuse, molestation or sexual conduct." The Underlying Lawsuit alleges the Trinity Defendants subjected Underlying Plaintiffs to verbal, physical, psychological, and emotional abuse. The Underlying Lawsuit alleges liability that arises out the Trinity Defendants' actual or threatened abuse.

105.    The Miscellaneous Professional Liability Coverage Endorsement excludes coverage for any "injury arising out of willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured."

106.    The FAC alleges that injury arose out of willful violation of a penal statute or ordinance committed by or with the knowledge of any insured, including that the Trinity Defendants:

a.    Knowingly provided or obtained Underlying Plaintiffs' labor services by means of force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm, conduct criminalized under the TVPA.

b.    Knowingly benefitted from financially and/or received things of value from participating in a venture which engaged in providing or obtaining forced labor services, knowing or in reckless disregard that the venture provided or obtained such services, conduct criminalized under the TVPA.

c.    Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or service, conduct criminalized under the TVPA.

107.    The Miscellaneous Professional Liability Coverage Endorsement excludes coverage for "any dishonest, fraudulent or criminal act or omission of any insured."

108.    The FAC alleges that the Trinity Defendants engaged in fraudulent or criminal acts or omissions, including that they:

a.    Acted dishonestly and fraudulently when promising plaintiffs' parents therapy and education, instead engaging in a scheme to secure free labor.

b.    Knowingly provided or obtained Underlying Plaintiffs' labor services by means of force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm, conduct criminalized under the TVPA.

c.    Knowingly benefitted from financially and/or received things of value from participating in a venture which engaged in providing or obtaining forced labor services, knowing or in reckless disregard that the venture provided or obtained such services, conduct criminalized under the TVPA.

d.     Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or service, conduct criminalized under the TVPA.

109.   The Miscellaneous Professional Liability Coverage Endorsement exclude coverage for any "liability arising out of an insured gaining any personal profit or advantage to which they are not legally entitled."

110.   The FAC alleges that the Trinity Defendants gained personal profit or advantage to which they were not legally entitled, including that they:

a.     Acted dishonestly and fraudulently when promising plaintiffs' parents therapy and education, instead engaging in a scheme to secure free labor to which they were not entitled.

b.     Knowingly provided or obtained Underlying Plaintiffs' labor services by means of force, threat of force, physical restraint, threats of physical restraint, serious harm, or threats of serious harm, conduct criminalized under the TVPA.

c.     Knowingly benefitted from financially and/or received things of value from participating in a venture which engaged in providing or obtaining forced labor services, knowing or in reckless disregard that the venture provided or obtained such services, conduct criminalized under the TVPA.

d.     Knowingly recruited, harbored, transported, provided, and/or obtained by any means Underlying Plaintiffs for their labor or service, conduct criminalized under the TVPA.

111.   Therefore, MIC has no duty to defend or indemnify the Trinity Defendants under the Policies' Miscellaneous Professional Liability Coverage Endorsement.

## COUNT VIII
### Reimbursement For Defense Costs Incurred

112.    MIC repeats and reinstates Paragraphs 1 through 46 as though fully set forth herein.

113.    The Policies are subject to the Wyoming Changes – Defense Costs Endorsement, which provides:

> **B.**    If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims, for which we provided a defense or defense costs are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

114.    MIC agreed to defend the Trinity Defendants against the Underlying Lawsuit subject to a reservation of rights to decline coverage and seek reimbursement of defense costs.

115.    The FAC does not allege any claims covered under the Policies.

116.    MIC is entitled to terminate the defense and seek reimbursement for defense costs incurred.

## PRAYER FOR RELIEF

WHEREFORE, MIC respectfully requests this Court enter judgment in MIC's favor finding and declaring that:

a.    MIC has no duty to defend or indemnify Trinity Defendants under the Policies' Coverage A for "bodily injury" and "property damage" because:

    i.     the FAC does not allege "bodily injury;"
    ii.    the FAC does not allege "property damage;"
    iii.   the FAC does not allege an "occurrence:"
    iv.    the FAC alleges "bodily injury" or "property damage" that took place outside of the policy period of the Policies;

       v.      the Expected or Intended Injury exclusion precludes coverage for the Underlying Lawsuit;

b.      MIC had no duty to defend or indemnify Trinity Defendants under the Policies' Coverage B for "personal and advertising injury" because:

       i.      the FAC does not allege "personal and advertising injury;"

       ii.      the FAC alleges "personal and advertising injury" that was not committed during the periods of any of the Policies;

       iii.      the Knowing Violation Of Rights Of Another exclusion precludes coverage for the Underlying Lawsuit;

       iv.      the Criminal Acts exclusion precludes coverage for the Underlying Lawsuit;

c.      MIC has no duty to defend or indemnify Trinity Defendants under the Policies' Coverage A or Coverage B because the Abuse or Molestation exclusion precludes coverage for the Underlying Lawsuit;

d.      MIC has no duty to defend or indemnify Trinity Defendants under the Policies' Abuse or Molestation Coverage Endorsements because:

       i.      the FAC does not allege negligent employment, training, supervision, reporting, or retention by the Trinity Defendants;

       ii.      the Participating Insured exclusion precludes coverage for the Underlying Lawsuit; and

       iii.      the Passive Insured exclusion precludes coverage for the Underlying Lawsuit.

e.      MIC has no duty to defend or indemnify Trinity Defendants under the Policies' Coverage A, Coverage B, or Abuse or Molestation Endorsements because the Colleges or Schools endorsement precludes coverage for the Underlying Lawsuit;

f.      MIC has no duty to defend or indemnify Trinity Defendants under the Policies' Coverage A, Coverage B, or Abuse or Molestation Endorsements because the Services Furnished By Healthcare Providers endorsement precludes coverage for the Underlying Lawsuit.

g.   MIC has no duty to defend or indemnify Trinity Defendants under the Policies'

Miscellaneous Professional Liability Coverage Endorsements because:

    i.   the FAC does not allege a "wrongful act;"
    ii.   the FAC alleges "wrongful acts" committed outside of the period of any of the Policies;
    iii.   the Molestation, Sexual Misconduct Or Abuse exclusion precludes coverage for the Underlying Lawsuit;
    iv.   the Violation of Statute exclusion precludes coverage for the Underlying Lawsuit;
    v.   the Fraud exclusion precludes coverage for the Underlying Lawsuit; and
    vi.   the Personal Gain exclusion precludes coverage for the Underlying Lawsuit.

h.   MIC is entitled to recoup defense costs incurred in defending Trinity Defendants in

connection with the Underlying Lawsuit.

i.   For such other and further relief as this Court deems just and proper under the

circumstances.

Dated: September 13, 2024          Respectfully submitted,

                         /s *Anna Reeves Olson*
                       Anna Reeves Olson (WY Bar No. 6-3692)
                       LONG REIMER WINEGAR LLP
                       242 South Park Street
                       Casper, WY 82601
                       aolson@lrw-law.com
                       Tel: (307) 265-3843

                       -and-

                       Leena Soni (*pro hac vice* forthcoming)
                       Madison G. Satterly (*pro hac vice* forthcoming)
                       NICOLAIDES FINK THORPE
                       MICHAELIDES SULLIVAN LLP
                       10 South Wacker Drive, Ste. 3600
                       Chicago, IL 60606
                       lsoni@nicolaidesllp.com
                       msatterly@nicolaidesllp.com
                       Tel: (312) 585-1400
                       Fax: (312) 585-1401

                       *Attorneys for Plaintiff Markel Insurance Company*