# EXHIBIT C



January 27, 2022

**VIA EMAIL and FIRST CLASS & CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Angie Woodward
Trinity Teen Solutions, Inc.
64 Safe Haven Road
Powell, WY 82345
Angie@trinityteensolutions.com

RE:    Our Insured:    Trinity Teen Solutions, Inc.; Trinity Girls Ranch
        Matter:    *Sherman,* et al. *v. Trinity Teen Solutions, Inc.,* et al., No. 0:20-cv-00215-SWS (United States District Court for the District of Wyoming)
        Our File No.:    CHUP2816V3828
        Policy Nos.:    8502SS329058-0, 9/12/09 – 9/12/10
                8502SS329058-1, 9/12/10 – 9/12/11
                8502SS329058-2, 9/12/11 – 9/12/12
                8502SS329058-3, 9/12/02 – 9/12/13
                8502SS329058-4, 9/12/13 – 9/12/14
                8502SS329058-5, 9/12/14 – 9/12/15
                8502SS329058-6, 9/12/15 – 9/12/16
                8502SS329058-7, 9/12/16 – 9/12/17
                HUP2816-01, 9/12/17 – 9/12/18
                HUP2816-02, 9/12/18 – 9/12/19
                HUP2816-03, 9/12/19 – 9/12/20

Dear Ms. Woodward:

As you know, Markel Service, Incorporated is the claim service manager for Markel Insurance Company ("MIC"). We write regarding the above-referenced lawsuit, referred to throughout this letter as the "underlying lawsuit."

This letter is an updated coverage position that takes into account recent developments in the underlying lawsuit, specifically the court's ruling on the second motion to dismiss and the order granting defendants' motion to sever the case into two proceedings.

As previously stated, MIC's agreement to defend you, Jerry Woodward, Kara Woodward, Kyle Woodward, Trinity Teen Solutions, Inc.  ("TTS"), and Dally-Up, LLC ("Dally-Up") (collectively, the "TTS defendants') in the underlying lawsuit is pursuant to a full Reservation of Rights. By defending this matter under a Reservation of Rights, we reserve the right to further investigate this matter and disclaim coverage for any damages that are not covered under the MIC Policies.

<u>**FACTUAL BACKGROUND**</u>

On November 25, 2020, plaintiffs Carlie Sherman, Anna Gozun, Amanda Nash, and John Doe filed a Class Action Complaint in the United States District Court for the District of Wyoming. An

**Markel - Claims**
**Arizona · California · Illinois · Nebraska · New Jersey · New York · Texas · Virginia · Wisconsin**
P.O. Box 2009, Glen Allen, VA 23058-2009  (800) 362-7535  Fax (855) 662-7535  markelclaims@markel.com
California License: Markel West Insurance Services #OD95581
www.markel.com

Please review our privacy policy at www.markel.com/privacy-policy.

Amended Complaint was filed In February 2021. The following parties were named as defendants in the Amended Complaint: TTS; Triangle Cross Ranch, LLC; Monks of the Most Blessed Virgin Mary of Mount Carmel, dba Mystic Monk Coffee; Gerald E. Schneider; Michaeleen P. Schneider; Angela C. Woodward; Jerry D. Woodward; Daniel Schneider; Mathew Schneider; Mark Schneider; Kara Woodward; Kyle Woodward; Thomas George; Judith D. Jefferis; Dally-Up; Rock Creek Ranch, Inc.; Diocese of Cheyenne; Society of Our Lady of the Most Holy Trinity; and New Mount Carmel Foundation, Inc.

On November 30, 2021, the court in the underlying lawsuit granted in part and denied in part the TTS defendants' motion to dismiss the Amended Complaint. Then, on January 12, 2022, the court severed the underlying cases into two separate cases. The claims against the TTS defendants remain pending under Case No. 0:20-cv-00215-SWS. Plaintiffs in that case are Carlie Sherman, Anna Gozun, and Amanda Nash, on behalf of themselves and similarly situated persons. The claims against other defendants are pending under Case No. 1:20-cv-215.

This factual background section cites the allegations made by plaintiffs Sherman, Gozun, and Nash because they are now the only plaintiffs in Case No. 0:20-cv-00215-SWS. The allegations made by Doe in Case No. 1:20-cv-00215-SWS are not made again the TTS defendants and, therefore, at issue. By citing the allegations in the Case No. 0:20-cv-00215-SWS, MIC does not accept them as true.

According to the Amended Complaint, TTS is a working ranch and residential treatment center located in Park County, Wyoming. TTS is owned by you and your husband, Gerald Woodward. Kara Woodward and Kyle Woodward are employees of TTS.

Plaintiffs allege that TTS and its owners "engaged in a recruitment scheme whereby they induced and continue to induce parents of troubled minors to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment, therapy, and continuing education." According to plaintiffs, the goal of this scheme is to use fraudulently obtained child labor under the guise of "Residential Treatment Centers" or "Group Homes."

Plaintiffs claim that, in reality, TTS abused plaintiffs and obtained unpaid labor "under the constant threat of physical and emotional punishment and further confinement." Plaintiffs allege a scheme "to make Plaintiffs and other putative class members afraid, intimidated, and powerless to leave Defendant Owners' employment while all Defendants profited or knowingly benefitted, financially or through receipt of free labor, from participation in a venture which all Defendants knew or should have known was unlawful."

According to the Amended Complaint, plaintiffs were forced to labor under hazardous conditions that caused injuries including frostbite. In addition, plaintiffs allege they were subject to or threatened with food and sleep deprivation; physical punishment; emotional abuse; humiliation; forced silence; and participation in group therapy without a licensed therapist. Plaintiffs also maintain they were not allowed to progress through "levels" imposed by defendants in order to leave TTS.

Additionally, plaintiffs allege that TTS's owners coordinated the use of plaintiff's labor to provide weekly and event cleanup services for local churches and facilities owned by co-defendants, and that the owners "benefitted from the forced labor and human trafficking executed" by the owners and TTS.

Plaintiff Sherman alleges she was a resident at TTS between May 2012 and July 2013 and again from July 2014 to October 2015. She alleges she was forced to (1) cook for 20 people daily; (2) shovel manure for four hours per day for a month and a half; (3) pick rocks for hours per day

during the summer; (4) complete hay runs and manually load and unload hay trucks in the winter months; (5) run irrigation pipes for multiple hours during the summer; (6) participate in lamb shifts; (7) feed, groom, and provide medical attention to animals daily; (8) clean ranch vehicles; (9) perform animal husbandry; (10) install fencing; and (11) clean at the Our Lady of the Valley Church. Sherman also alleges she suffered mild frostbite on her fingers, multiple twisted ankles, ingrown toenails, yeast infections, lice, and injuries from falling on a cactus while being forced to run down a hill. She claims she was denied medical treatment and access to a restroom or latrine such that she was forced to urinate on herself.

Plaintiff Gozun resided at TTS from February 2, 2012 to August 1, 2012. She alleges forced labor substantially similar to that alleged by Sherman. She further alleges she frequently rolled her ankle while performing the labor and that she suffered frequent burns and cuts, for which she was punished. Furthermore, she suffered UTIs from holding her urine at night and lack of adequate showers. She was diagnosed with hydronephrosis from holding her urine. After leaving TTS, she was diagnosed with PTSD.

Plaintiff Nash resided at TTS from May 7, 2015 to November 2015. She alleges she was forced to (1) clean and do laundry for all cabins for three separate two-week periods; (2) cook for 20 people daily for three separate two-week periods; (3) shovel sheep feces for multiple hours per day; (4) complete hay runs and manually load and unload hay trucks for one week; (5) run irrigation pipes for hours per day; (6) pick rocks for multiple hours per day during the summer; and (7) dispose of dead animals. She also alleges she was forced to take care of a goat that dragged, head-butted, and bit her, and that she was forced to run up a hill every morning and afternoon.

Plaintiffs seek to certify the following class: plaintiffs and all similarly situated persons who were housed at TTS from November 27, 2010 to the present and forced to provide manual labor to one or more of the defendants. Plaintiff Nash seeks to certify a subclass of plaintiffs and all similarly situated persons within the applicable statute of limitations who were housed at TTS and who, due to the negligence of TTS, were diagnosed with or suffer from PTSD.

Among the issues alleged to be common among the putative class are the nature of damages available to plaintiffs, including the applicability of compensatory and punitive damages; whether defendants knowingly benefitted from participating in a venture they knew or should have known was engaged in obtaining the putative class members' labor or services through physical restraint, serious harm, or abuse of the legal process; and whether defendants knowingly benefitted from participating in a venture they knew or should have known was engaged in the recruitment, harboring, transporting, obtaining, or providing the putative class members for the purpose of subjecting them to forced labor or involuntary servitude.

The Amended Complaint alleges the following causes of action against TTS and the Woodward defendants: (1) Civil Action under Federal Law for Forced Labor under 18 U.S.C. § 1589(a) of the Trafficking Victims Protections Reauthorization Act ("TVPRA"); (2) Civil Action under Federal Law for Forced Labor under 18 U.S.C. § 1589(b) of the TVPRA; (3) Civil Action under Federal Law for Trafficking under 18 U.S.C. § 1590(a) of the TVPRA; (4) Civil Action for Violation of Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et. seq.* In addition, the Amended Complaint alleges negligence and negligent infliction of emotional distress against TTS and Dally-Up. Plaintiffs seek compensatory damages, threefold damages, attorneys' fees, prejudgment interest, post-judgment interest, and costs.

In the court's November 30, 2021 ruling, the court dismissed the RICO claim and the claims for negligence and negligent infliction of emotional distress. Therefore these claims are not addressed in this correspondence.

**POLICY INFORMATION**

MIC insures TTS and Trinity Girls Ranch for eleven consecutive policy periods under the following commercial lines policies.

- Policy No. 8502SS329058-0, 9/12/09 – 9/12/10
- Policy No. 8502SS329058-1, 9/12/10 – 9/12/11
- Policy No. 8502SS329058-2, 9/12/11 – 9/12/12
- Policy No. 8502SS329058-3, 9/12/12 – 9/12/13
- Policy No. 8502SS329058-4, 9/12/13 – 9/12/14
- Policy No. 8502SS329058-5, 9/12/14 – 9/12/15
- Policy No. 8502SS329058-6, 9/12/15 – 9/12/16
- Policy No. 8502SS329058-7, 9/12/16 – 9/12/17
- Policy No. HUP2816-01, 9/12/17 – 9/12/18
- Policy No. HUP2816-02, 9/12/18 – 9/12/19
- Policy No. HUP2816-03, 9/12/19 – 9/12/20

Each MIC Policy provides commercial general liability limits of $1,000,000 each occurrence, $1,000,000 personal and advertising injury, $1,000,000 products-completed operations aggregate, and $3,000,000 general aggregate. In addition, each policy provides abuse/exploitation limits of $1,000,000 each person and $1,000,000 aggregate as well as professional liability limits of $1,000,000 each wrongful act and $3,000,000 aggregate.

Selected portions of the MIC Policies are set forth below. As there may be differences in these provisions depending on the Policy at issue, please refer to each Policy for the precise language used therein.

**Definition of Insured**

TTS is a named insured under the MIC Policies. In addition, "executive officers" and directors of TTS are insureds with respect to their duties as officers or directors, and stockholders are insured with respect to their liability as stockholders. "Executive officer" is defined in the Policies as "a person holding any of the officer positions created by [TTS's] charter, constitution, by-laws or any other similar governing document."

The Amended Complaint alleges you and Jerry Woodward are owners and operators of TTS. To the extent you and Jerry qualify as "executive officers" or directors of TTS, you and Jerry are insured with respect to your duties as officer or directors. To the extent you and Jerry are stockholders of TTS, you qualify as insureds with respect to your liability as stockholders.

"Employees" of TTS are also insured under the Policies for acts within the scope of their employment by TTS or while performing duties related to the conduct of TTS. The Amended Complaint alleges that Kara Woodward and Kyle Woodward are employed by TTS. As employees of TTS, Kara and Kyle are insured for acts within the scope of their employment by TTS or while performing duties related to the conduct of TTS.

Dally-Up is a named additional insured under Policies 8502SS329058-2 and 8502SS329058-3 for injury caused, in whole or in part, by TTS's acts or omissions or the acts or omissions of those acting on behalf of TTS in the performance of TTS's ongoing operations or in connection with TTS's premises owned by or rented to TTS. In addition, pursuant to the Commercial General Liability Plus Extension Endorsement to the Policies, lessors of property leased to TTS are additional insureds with respect to liability for injury caused, in whole or in part, by TTS's acts or

omissions or the acts or omissions of those acting on TTS's behalf in connection with that part of the premises leased or rented to TTS and shown in the Declarations. There is no coverage for any "occurrence" that takes place after TTS ceases to be a tenant in the premises. If Dally-Up is a lessor of premises leased to TTS, it potentially qualifies as an additional insured under the Commercial General Liability Plus Extension Endorsement.

**<u>Commercial General Liability Coverage – Coverage A</u>**

Each Policy contains a Commercial General Liability Coverage Form. The insuring agreement for Coverage A of this form states, in relevant part.

### Coverage A Bodily Injury and Property Damage Liability

**1.      Insuring Agreement**

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)**     The amount we will pay for damages is limited as described in Section **III –** Limits of Insurance; and

**(2)**     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** And **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or

"property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Pursuant to this insuring agreement, coverage is provided only for "bodily injury" or "property damage" that takes place during the policy period. The Amended Complaint does not allege "property damage." MIC reserves the right to disclaim coverage for damages that are not for "property damage."

While there are allegations of "bodily injury," there are no claims of "bodily injury" during the September 12, 2009 to September 12, 2010 policy period of Policy No. 8502SS329058-0. Therefore, there is no coverage under Coverage A of Policy No. 8502SS329058-0.

Not all of the injury alleged in the Amended Complaint qualifies as "bodily injury." MIC reserves the right to disclaim coverage for damages that are not for "bodily injury."

The Coverage A Insuring Agreement states that insurance applies to "bodily injury" caused by an "occurrence." "Occurrence" is defined in the MIC Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Throughout the Amended Complaint, plaintiffs allege intentional, non-accidental conduct on the part of the defendants. MIC reserves the right to disclaim coverage for damages because of "bodily injury" that is not accidental because such damages are not for injury caused by an "occurrence." MIC also reserves the right to determine whether the alleged misconduct resulted in multiple occurrences under the Policies.

Policy Nos. 8502SS329058-0 through 8502SS329058-5 include an Expected or Intended injury exclusion that states that coverage does not apply to "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured." The exclusion does not apply to injury or damage "resulting from the use of reasonable force to protect persons or property." As stated above, the Amended Complaint alleges intentional conduct by the defendants. MIC reserves the right to disclaim coverage for damages arising out of expected or intended conduct, including the knowing conduct alleged in the Amended Complaint.

Policy Nos. 8502SS329058-4 and 8502SS329058-5 contain a Corporal Punishment Exclusion that states: "This insurance does not apply to 'bodily injury', 'property damage' or 'personal and advertising injury' to your student arising out of any corporal punishment administered by or at the direction of the insured." MIC reserves the right to disclaim coverage for damages for injury arising out of corporal punishment under Policy Nos. 8502SS329058-4 and 8502SS329058-5.

Policy Nos. 8502SS329058-6 through HUP2816-3 include an Expected or Intended injury exclusion that states that coverage does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured with the exception of "bodily injury" resulting from (1) the use of reasonable force to protect persons or property; or (2) corporal punishment to your student administered by or at the direction of any insured. In these policies, the Expected or Intended Exclusion will bar coverage for expected or intended conduct but not for injury resulting from corporal punishment.

**Commercial General Liability Coverage – Coverage B**

The insuring agreement for Coverage B of the Commercial General Liability Coverage Form states, in relevant part.

### Coverage B Personal And Advertising Injury Liability

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(3)**    The amount we will pay for damages is limited as described in Section **III –** Limits of Insurance; and

        **(4)**    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** And **B**.

    **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The definition of "personal and advertising injury" includes injury arising out of "[f]alse arrest, detention or imprisonment." To the extent the Amended Complaint can be construed to allege false detention or imprisonment, Coverage B potentially provides coverage for the underlying lawsuit. MIC reserves the right to disclaim coverage for the underlying lawsuit on the basis that it does not allege false detention or imprisonment.

Pursuant to the Coverage B insuring agreement, coverage is provided only for an offense committed during the policy period. The Amended Complaint does not seek damages for an offense committed during the September 12, 2009 to September 12, 2010 policy period of Policy No. 8502SS329058-0. Therefore, there is no coverage under Coverage B of Policy No. 8502SS329058-0. MIC reserves the right to disclaim coverage under any Policy on the grounds that an offense was not committed during the relevant policy period.

Coverage B is subject to an exclusion for the knowing violation of rights of another. That exclusion states that the insurance does not apply to "personal and advertising injury" that is "caused by or at the direction of the insured with the knowledge that the act would violate the

rights of another and would inflict 'personal and advertising injury.'" The Amended Complaint alleges knowing misconduct on the part of the defendants. MIC reserves the right to disclaim coverage for damages for injury that is caused by an insured with knowledge that their acts would violate plaintiffs' rights and inflict "personal and advertising injury."

Coverage B is also subject to an exclusion for criminal acts. That exclusion precludes coverage for "'personal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." MIC reserves the right to disclaim coverage for "personal and advertising injury" arising out of criminal acts, including but not limited to criminal acts under TVPRA.

### Abuse or Molestation Coverage

<u>Policy Nos. 8502SS329058-1 through 8502SS329058-5</u>

Policy Nos. 8502SS329058-1 through 8502SS329058-5 contain an Abuse or Molestation Coverage Endorsement with limits of $1,000,000 per person and $1,000,000 aggregate. The endorsement adds the following insuring agreement to the Coverage A insuring agreement:

> We will pay those sums the insured becomes legally obligated to pay as damages that result in "bodily injury", "property damage", "personal and advertising injury", or any other injury because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a person for whom any person is or ever was legally responsible. Coverage includes the actual, alleged, or threatened abuse, molestation or exploitation by anyone of any person while in the care, custody or control of any insured.

> The term "bodily injury" includes mental anguish or emotional distress.

This endorsement provides coverage for abuse, molestation, or exploitation, but only if the abuse, molestation, or exploitation arises from negligent employment, training, investigation, reporting to the proper authorities, or failure or so report, or retention and supervision of a person for whom any person was legally responsible. The endorsement does not provide coverage for intentional actions. MIC reserves the right to disclaim coverage under the endorsement for damages that do not arise out of the negligent conduct listed in the insuring agreement.

Further, the abuse and molestation coverage does not apply to: (1) costs, fines, or penalties incidental to or arising from any criminal investigation or prosecution regarding abuse, molestation, or exploitation; (2) any obligation to pay fines, penalties, punitive damages, exemplary damages, or aggravated damages; (3) any person who takes part in inflicting abuse, molestation, or exploitation upon another person; or (4) any person who remains passive upon gaining knowledge of any actual, alleged, or threatened abuse, molestation, or exploitation committed by an "employee" or "volunteer worker" of the insured. MIC reserves the right to disclaim coverage for liability subject to these exclusions.

Part 1 of the "Limits of Insurance" section of the endorsement states:

> The Limits of Insurance shown in the Schedule of his endorsement fix the most we will pay for abuse, molestation, or exploitation.

The coverage provided by this endorsement does not provide any duplication or overlap of coverage for the same claim or "suit".

Multiple incidents of abuse, molestation or exploitation involving a person which take place over multiple policy periods for which this coverage is provided by us shall be deemed as one "occurrence" and shall be subject to the coverage and limits in effect at the time of the first incident.

The Limit of Insurance provided by this endorsement is not considered part of the Limit of Insurance provided by the Commercial General Liability Coverage Form.

No coverage in this policy is provided for abuse, molestation or exploitation except as provided herein, under the endorsement.

Pursuant to this provision, multiple insuring agreements will not apply to this lawsuit. Further, the only coverage for abuse, molestation, or exploitation is that provided by this endorsement. If one person is subject to multiple incidents of abuse, molestation, or exploitation taking place over multiple policy periods, then those multiple incidents are deemed to be one "occurrence" subject to the coverage and limits in effect at the time of the first incident.

<u>Policies No. 8502SS329058-6 through HUP2816-03</u>

Policies No. 8502SS329058-6 through HUP2816-03 contain an Abuse or Molestation Coverage endorsement with limits of $1,000,000 per person and $1,000,000 aggregate. The endorsement adds an abuse or molestation exclusion to the Commercial General Liability Form. That exclusion states:

This insurance does not apply to:

**Abuse or Molestation**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual or threatened abuse, molestation or exploitation by anyone. This exclusion applies even if the claim against the insured alleges negligence or other wrongdoing in the employment, investigation, supervision, reporting to the property authorities or failing to so report, training or retention.

Pursuant to this exclusion, there is no coverage for abuse, molestation, or exploitation under the Commercial General Liability form except as provided in the endorsement. The insuring agreement in the endorsement states:

**1.    Insuring Agreement**

**a.**    We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" arising out of abuse, molestation or exploitation to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking such damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this

insurance does not apply. Nor do we have a duty to defend any insured who is alleged to have taken part in the abuse, molestation or exploitation. We may, at our discretion, investigate and settle any claim or "suit' that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **C.** Limits of Insurance below; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Abuse Or Molestation Coverage.

**b.** This insurance applies only to "bodily injury" arising out of abuse, molestation or exploitation only if the abuse, molestation or exploitation:

**(1)** Takes place in the "coverage territory";

**(2)** Results from the insured's negligence in employment, investigation, supervision, reporting to the proper authorities or failure to so report, training or retention; and

**(3)** First occurs during the policy period.

**c.** Abuse, molestation or exploitation which first occurs during the policy period includes any continuation, change or resumption of that abuse, molestation or exploitation after the end of the policy period.

**d.** Multiple acts of abuse, molestation or exploitation of any one person by one or more perpetrators will be deemed to have first occurred at the time of the first act of such abuse, molestation or exploitation and shall be subject to the coverage and limits in effect at the time of the first act of abuse, molestation or exploitation.

Pursuant to this endorsement, the only abuse or molestation coverage provided under Policy Nos. Policies No. 8502SS329058-6 through HUP2816-03 is that provided in the endorsement, which provides coverage only for abuse, molestation, or exploitation that occurs during the policy period and that results from the insured's negligence in employment, investigation, supervision, reporting to proper authorities, failure to report, training, or retention. MIC reserves the right to disclaim coverage for "bodily injury" not covered under the insuring agreement.

The endorsement contains exclusions for (1) fines, penalties, punitive damages, exemplary damages, or aggravated damages; (2) any insured who takes part in the abuse, molestation, or exploitation; and (3) any insured who remains passive upon gaining knowledge of any actual,

alleged or threatened abuse, molestation, or exploitation. MIC reserves the right to disclaim coverage for liability subject to one or more of these exclusions.

Regarding the per person limit, the endorsement states "the Each Person limit shown in the Schedule of this endorsement is the most we will pay under Abuse Or Molestation Coverage for damages because of 'bodily injury' arising out of abuse, molestation or exploitation committed upon any one person, regardless of the number of acts of abuse, molestation or exploitation committed, the period of time over which such acts occur, or the number of perpetrators taking part in the abuse, molestation or exploitation."

The endorsement further states: "The coverage provided by this endorsement does not provide any duplication or overlap of any other coverage provided elsewhere in this policy. No coverage is provided for abuse, molestation or exploitation under this policy except as provided in this endorsement."

Finally, the endorsement contains the following Condition:

### Multiple Coverage Forms Or Policies Issued By Us

When two or more Coverage Forms or policies issued by us or any other Markel Corporation owned or operated insurance company apply to the same claim, "suit' or loss, the maximum limit of our liability under all such Coverage Forms or policies combined shall not exceed the highest applicable limit of liability under any one Coverage Form or policy among them.

Pursuant to these provisions, the maximum limit of liability available for the same claim, "suit," or loss will not exceed the highest limit of available under any one applicable Coverage Form or MIC Policy. Multiple limits are not available for the same claim, "suit," or loss.

<u>**Professional Liability**</u>

Each MIC Policy includes a Miscellaneous Professional Liability Coverage endorsement that modifies the Commercial General Liability form and adds professional liability coverage with limits of $1,000,000 each wrongful act and $3,000,000 aggregate.

<u>Policy Nos. 8502SS329058-1 through 8502SS329058-5</u>

The insuring agreement in the Miscellaneous Professional Liability Coverage Endorsement in Policy Nos. 8502SS329058-1 through 8502SS329058-5 states:

We will pay all sums which you become legally obligated to pay as "damages" arising out of a covered "wrongful act" to which this insurance applies or "wrongful act(s)" of others for which you are liable. We have the right and the duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit' that may result. The "damages" must arise out of a "wrongful act" taking place in the "coverage territory" during the policy period.

"Wrongful act" is defined as "any actual or alleged negligent act, error or omission in the actual rendering of professional services to others arising out of your operations described in this Endorsement, including the furnishing of food, beverages, medications or appliances in connection therewith." Moreover, "any or all 'wrongful acts' arising from interrelated or series of acts, errors or omissions shall be deemed to be one 'wrongful act' taking place at the time of the earliest 'wrongful act.' The operations referenced in the endorsement are "social services."

The endorsement provides coverage only for "wrongful acts" that take place during the policy period. The endorsement provides coverage only for "wrongful acts" that take place during the policy period. The Amended Complaint does not allege wrongful acts during the September 12, 2010 to September 12, 2011 policy period and thus does not implicate coverage under Policy No. 8502SS329058-1. MIC reserves the right to disclaim coverage to the extent the underlying lawsuit does not fall within the Miscellaneous Professional Liability insuring agreement.

The endorsement has several exclusions that potentially limit or preclude coverage under the endorsement. Exclusion 3 states that the insurance does not apply to liability "resulting from any actual, threatened, or alleged abuse, molestation or sexual conduct." Thus, professional liability coverage will not be provided for any insured's liability resulting from abuse, molestation, or sexual conduct.

Exclusion 11 precludes coverage for any "dishonest, fraudulent or criminal act or omission of any insured." The Amended Complaint alleges fraud by several defendants and also alleges that TTS and its owners "engaged in a recruitment scheme whereby they induced and continue to induce parents of troubled minors to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment, therapy, and continuing education." Such conduct, if proved, is both dishonest and fraudulent and will not be covered under the professional liability endorsement. MIC reserves the right to disclaim coverage for the underlying lawsuit under this exclusion.

Exclusion 16 bars coverage for liability "arising out of an insured party gaining any personal profit or advantage to which they are not legally entitled." The Amended Complaint alleges that the defendant owners schemed "to make Plaintiffs and other putative class members afraid, intimidated, and powerless to leave Defendant Owners' employment while all Defendants profited or knowingly benefitted, financially or through receipt of free labor, from participation in a venture which all Defendants knew or should have known was unlawful." Further, plaintiffs allege "they and the Class should also be permitted to recover any sums that TTS was paid during their residence at either TTS relative to their putative 'treatment' or housing." The professional liability coverage will not apply to any liability arising out of an insured gaining an unlawful profit or advantage. MIC reserves the right to disclaim coverage for the underlying lawsuit under this exclusion.

Exclusion 18 states that insurance is not provided for "[f]ines or non-compensatory penalties, or for any exemplary or punitive 'damages' awarded in any legal proceeding if the legal proceeding is based in whole or in part upon any professional activity." This exclusion bars coverage for the "threefold damages" sought by plaintiff as well as for any other fines, non-compensatory penalties, and punitive damages. MIC reserves the right to disclaim coverage for the underlying lawsuit under this exclusion.

The Limits of Insurance section of the endorsement states that no coverage is provided for Miscellaneous Professional Liability except as provided in the endorsement. If the endorsement does not provide coverage, then there is no coverage under Policy Nos. 8502SS329058-1 through 8502SS329058-5 for professional liability. The same section states: ""The coverage provided by the Endorsement does not provide any duplication or overlap of coverage for the same claim or

'suit'." Thus, to the extent coverage is provided for the underlying lawsuit under another coverage part of the Policies, it is not also provided under the endorsement.

<u>Policy No. 8502SS329058-6</u>

The insuring agreement in the Miscellaneous Professional Liability Coverage endorsement in Policy No. 8502SS329058-6 states, in relevant part:

**1.**      **Insuring Agreement**

     **a.**      We will pay those sums the insured becomes legally obligated to pay as "damages" because of "injury" arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any report of a "wrongful act" and settle any claim or "suit' that may result. But:

     **(1)**      The amount we will pay for "damages" is limited as described in Paragraph **C.** of this endorsement; and

     **(2)**      Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

     **b.**      This insurance applies to "injury" only if:

     **(1)**      The injury is caused by a "wrongful act" that takes place in the "coverage territory";

     **(2)**      The "injury" occurs during the policy period; and

     **(3)**      Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or received notice of a "wrongful act" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

     **c.**      "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An

Insured or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

"Wrongful act" is defined as "any actual or alleged negligent act, error or omission in the rendering of or failure to render the professional services described in the Schedule of this endorsement, including the furnishing of food, beverages, medications or appliances in connection with those operations." The professional services described in the Schedule of the endorsement are: "Social Workers/Counselors, Teachers/Residential Managers." MIC reserves the right to disclaim coverage for acts, errors, or omissions that are not made in the rendering of or failure to render the scheduled professional services. MIC also reserves the right to disclaim coverage for damages that do not arise out of negligent acts, errors, or omissions in the rendering of or failure to render those professional services.

The term "damages" includes a monetary judgment, award, or settlement but does not include fines, sanctions, penalties, punitive damages, or the trebling of damages. Thus, the term does not include the treble damages sought by plaintiffs, nor does it includes any fines or punitive damages sought by plaintiffs or the class.

Exclusion k. of the professional liability coverage endorsement states that the insurance does not apply to any "dishonest, fraudulent or criminal act or omission by or at the direction of any insured." As noted above, the Amended Complaint alleges dishonest, fraudulent, and criminal acts or omissions by the defendants. MIC reserves the right to disclaim coverage for damages for such acts or omissions.

Exclusion p. of the professional liability coverage states that insurance is not available for liability "resulting from any actual, threatened, or alleged molestation, sexual misconduct or abuse of any type." The exclusion "applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'wrongful act' involved the rendering of or failure to render the professional services described in the Schedule" of the endorsement. Pursuant to this exclusion, MIC reserves its right to disclaim coverage for liability for molestation, sexual misconduct, or abuse of any other kind.

Exclusion s. precludes coverage for liability "arising out of an insured gaining any personal profit or advantage to which they are not legally entitled." As noted above, the Amended Complaint alleges that the defendants profited or knowingly benefitted from their actions and that plaintiffs should be permitted to recover any sums that TTS was paid during plaintiffs' residence at either TTC. The professional liability coverage will not apply to any liability arising out of an insured gaining an unlawful profit or advantage. MIC reserves the right to disclaim coverage for the underlying lawsuit under this exclusion.

The Limits of Insurance section of the endorsement states, in part:

The coverage provided by the endorsement does not provide any duplication or overlap of coverage for the same claim or "suit". Two or more claims arising out of a single "wrongful act" or a series of related "wrongful acts" shall be treated as a single claim. All such claims, whenever made, shall be considered to be first made on the date on which the earliest claim arising out of such "wrongful act" was first made. All such claims are subject to the same Limit of Insurance. All claims arising out of one "wrongful act" to the same person by one more

insured(s) shall be deemed to be one claim and to have been made at the time the first of those claims is made against any insured.

Pursuant to this provision, the professional liability coverage does not provide duplicate or overlapping coverage for a claim or "suit" covered under another coverage within the Policy. In addition, multiple claims arising out of a series of "wrongful acts" are treated as a single claim subject to one limit of insurance.

Finally, the endorsement adds the following Condition to coverage:

### Multiple Coverage Forms Issued By Us

When two or more Coverage Forms issued by us or any other Markel Corporation owned or operated insurance company apply to the same claim, "suit' or loss, the maximum limit of our liability under all such Coverage Forms combined shall not exceed the highest applicable limit of liability under any one Coverage Form among them.

Pursuant to this provision, the maximum limit of liability available for the same claim, "suit," or loss will not exceed the highest limit of available under any one applicable Coverage Form. Multiple limits are not available for the same claim, "suit," or loss.

<u>Policy Nos. 8502SS329058-7 to HUP2816-3</u>

Policy Nos. 8502SS329058-7 to HUP2816-3 include a Miscellaneous Professional Liability Coverage endorsement with the following insuring agreement:

**1.    Insuring Agreement**

    **a.**    We will pay those sums the insured becomes legally obligated to pay as "damages" because of injury arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any report of a "wrongful act" and settle any claim or "suit' that may result. But:

        **(1)**    The amount we will pay for "damages" is limited as described in Paragraph **D.** of this endorsement; and

        **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    **b.**    This insurance applies to injury only if:

        **(1)**    The injury is caused by a "wrongful act" that takes place in the "coverage territory";

      **(2)**    The injury occurs during the policy period; and

      **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or received notice of a "wrongful act" or claim, knew that the injury had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the injury occurred, then any continuation, change or resumption of such injury during or after the policy period will be deemed to have been known prior to the policy period.

      **c.**    Injury which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of a "wrongful act" or claim, includes any continuation, change or resumption of that injury after the end of the policy period.

"Wrongful act" is defined as "any actual or alleged negligent act, error or omission in the rendering of or failure to render professional services to others arising out of your operations, including the furnishing of food, beverages, medications or appliances in connection with those operations." MIC reserves the right to disclaim coverage for damages that do not arise out of negligent acts, errors, or omissions in the rendering of or failure to render those professional services.

The term "damages" includes a monetary judgment, award, or settlement but does not include fines, sanctions, penalties, punitive damages, or the trebling of damages. Thus, the term does not include the treble damages sought by plaintiffs, nor does it includes any fines or punitive damages sought by plaintiffs or the class.

Exclusion k. of the professional liability coverage endorsement states that the insurance does not apply to any "dishonest, fraudulent or criminal act or omission by or at the direction of any insured." The Amended Complaint alleges dishonest, fraudulent, and criminal acts or omissions by the defendants. MIC reserves the right to disclaim coverage for damages for such acts or omissions.

Exclusion o. states that insurance is not available for liability "resulting from any actual, threatened, or alleged molestation, sexual misconduct or abuse of any type." The exclusion "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'wrongful act' which caused the injury involved the rendering of or failure to render the professional services of your operations." Pursuant to this exclusion, MIC reserves its right to disclaim coverage for liability for molestation, sexual misconduct, or abuse of any other kind.

Exclusion q. precludes coverage for liability "arising out of an insured gaining any personal profit or advantage to which they are not legally entitled." As noted above, the Amended Complaint

alleges that the defendants profited or knowingly benefitted from their actions and that plaintiffs should be permitted to recover any sums that TTS was paid during plaintiffs' residence at either TTC. The professional liability coverage will not apply to any liability arising out of an insured gaining an unlawful profit or advantage. MIC reserves the right to disclaim coverage for the underlying lawsuit under this exclusion.

The Limits of Insurance section of the endorsement states, in part:

> The coverage provided by this endorsement does not provide any duplication or overlap of coverage for the same claim or "suit". Two or more claims arising out of a single "wrongful act" or a series of interrelated "wrongful acts" will be treated as a single claim. All such claims, whenever made, shall be considered to be first made on the date on which the earliest claim arising out of such "wrongful act" was first made. All such claims are subject to the same limit of insurance. All claims arising out of one "wrongful act" to the same person by one or more insured(s) will be deemed to be one claim and to have been made at the time the first of those claims is made against any insured.

Pursuant to this provision, the professional liability coverage does not provide duplicate or overlapping coverage for a claim or "suit" covered under another coverage within the Policy. In addition, multiple claims arising out of a series of "wrongful acts" are treated as a single claim subject to one limit of insurance.

Finally, the endorsement adds the following Condition to coverage:

> **Two or More Coverage Forms Or Policies Issued By Us**
>
> If the Coverage Form to which this endorsement is attached and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same claim or "suit", the aggregate maximum limit of insurance under all of the Coverage Forms or policies will not exceed the highest applicable limit of insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over the coverage provided by this endorsement..

Pursuant to this provision, the maximum limit of liability available for the same claim, "suit," or loss will not exceed the highest limit of available under any one applicable Coverage Form or policy. Multiple limits are not available for the same claim, "suit," or loss.

### Punitive Damages Exclusion

Each of the MIC Policies contains a punitive damages exclusion endorsement. The endorsement in Policy Nos. 8502SS329058-1 through 8502SS329058-6 states: "It is understood and agreed that coverage under this policy does not apply to punitive or exemplary damages, nor to fines, penalties or sanctions imposed by law, nor to defense costs related to any of the above." The exclusion in Policy Nos. 8502SS329058-7 through HUP2816-03 states:

> The following exclusion is added:
>
> This insurance does not apply to:

**Punitive Damages**

**1.**      Punitive or exemplary damages;

**2.**      Fines, penalties or sanctions imposed by law; or

**3.**      Defense costs related to any of the above.

While the Amended Complaint does not expressly seek punitive damages, it does state that one of the issues common to the putative class is the applicability of punitive damages. If plaintiffs or the putative class seek and are awarded punitive damages, those damages will not be covered under the MIC Policies.

<u>Late Notice</u>

The MIC Policies require TTS to notify MIC "as soon as practicable" of an "occurrence," offense, act of abuse, or "wrongful act" which may result in a claim. According to the Amended Complaint, TTS knew as early as 2016 that residents were alleging abuse during their stays at TTS. In 2016, TTS filed a defamation against three of these residents. MIC reserves the right to disclaim coverage based on TTS's failure to notify MIC of an "occurrence," offense, act of abuse, or "wrongful act" as soon as practicable.

<u>Defense Costs</u>

Each MIC Policy contains an endorsement titled "Wyoming Changes – Defense Costs" that modifies all insuring agreements with a duty to defend under the Commercial General Liability form. The endorsement states, in relevant part:

> If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense of the payment of defense costs and to seek reimbursement for defense costs.

Pursuant to this endorsement, MIC reserves its right to seek reimbursement for defense costs paid on behalf of an insured if it is later determined that none of the claims MIC defended are covered under the MIC Policies.

<u>**SUMMARY**</u>

Plaintiff Gozun alleges injury beginning in February 2012, and plaintiff Sherman alleges injury beginning in May 2012. Their claims potentially implicate coverage under Policy No. 8502SS329058-2, issued for the period September 12, 2011 to September 12, 2012. These plaintiffs also allege abuse or exploitation by the defendants. The only coverage for abuse and exploitation is provided under the Abuse or Molestation Coverage Endorsement to Policy No.

8502SS329058-2. The limits of liability under the endorsement are $1,000,000 per person and $1,000,000 aggregate. Multiple incidents of abuse and exploitation that take place over multiple policy periods are deemed one "occurrence" subject to the limits in effect at the time of the first incident. Therefore, if the endorsement provides coverage for the claims of Gozun and Sherman, the aggregate limit available for both claims together is $1,000,000.

Plaintiff Nash alleges injury beginning in May 2015. As such, her claim potentially implicates coverage under Policy No. 8502SS329058-5, issued for the period September 12, 2014 to September 15, 2015. Based on the allegations of the underlying lawsuit, Nash is alleging abuse or exploitation by the defendants. The only coverage for abuse and exploitation is provided under the Abuse or Molestation Coverage Endorsement to Policy No. 8502SS329058-5. The limits of liability under the endorsement are $1,000,000 per person and $1,000,000 aggregate. Multiple incidents of abuse and exploitation that take place over multiple policy periods are deemed one "occurrence" subject to the limits in effect at the time of the first incident. Therefore, if the endorsement provides coverage for Nash's claim, the limit available for that claim is the $1,000,000 per person limit under the endorsement to Policy No. 8502SS329058-5.

Please note that the limits available for each claim depend on the ultimate facts proved by the parties to the underlying lawsuit. Therefore, this summary necessarily provides only a preliminary discussion of limits potentially available for each plaintiff. Moreover, depending on the facts established by the parties, there may be no coverage for the underlying lawsuit. MIC reserves its right to re-assess the limits available for each claim as the allegations and evidence in the underlying lawsuit are more fully developed.

If plaintiffs are successful in certifying a class action, the limits available to each plaintiff may change, depending on the dates the alleged class members allege injury.

## **CONCLUSION**

MIC is defending the underlying lawsuit subject to all of the terms, conditions, limitations, and exclusions contained in the MIC Policies as well as any legal or equitable defenses to coverage, whether asserted or not asserted herein.

Please be advised that our position is based upon the facts and information available to us at this time and is subject to the availability and review of additional information. We may revise our position and raise any other coverage issues or coverage defenses without prejudice, waiver, or estoppel. Furthermore, this letter does not constitute a waiver of any policy provisions or defenses available to the MIC. All rights are expressly reserved.

Please note that this letter quotes the MIC Policies in part. Please refer back to the Policies for the complete and precise language of each Policy. The language cited herein is not meant to change, supplement, add, or subtract from the Policy terms. The language in the Policies is controlling.

If any of the factual information relied upon by us in this letter is materially incorrect, or if you possess any additional information which you believe impacts the coverage position taken herein, please contact me immediately at (312) 383-5574 or Melisa.Thompson@markel.com.

If an amended pleading is filed in the underlying lawsuit, please send it to me immediately, so we can evaluate the amended pleading for potential coverage under the MIC Policies.

Very truly yours,

*Melisa G. Thompson*

Melisa G. Thompson
Senior Director, Complex Claims
Markel Service, Incorporated

cc:      Robin Patterson, cbirobin@aol.com (email only)